## Edward H. Davis *et al.*, plaintiffs in error, *vs.* Abel Downs *et al.*, defendants in error.

A manufacturing firm agreed to make, and forward to a customer, fifty sets of a certain description of castings, according to a pattern and size ordered by him, to be forwarded from time to time, as finished, and the whole to be sent as soon as practicable. The first fifteen sets forwarded were alleged to be defective, and the purchaser refused to retain them, and notified the manufacturers; upon which, they offered to make good the defects, without expense to the purchaser. To which offer the purchaser made no answer, but when the balance of the castings came, without examining whether they were defective, returned the whole to the manufacturers.

*Held*, that the purchaser undertook to rescind the contract prematurely; that the manufacturers were entitled to a reasonable time to fulfill the contract after being notified of the defects in the articles, and that they were entitled to recover, according to the contract price, for such of the castings forwarded as were not defective.

Error to Jackson Circuit Court.

This was an action of assumpsit, brought to recover the purchase price of fifty sets of skeins and boxes. The plaintiffs below were in business at Seneca Falls, New York, under the firm of Downs & Co.; the defendants below, at Jackson, being contractors in the State Prison, under the style of Davis, Austin & Co.

Edward H. Davis *et al.*, plaintiffs in error, *vs.* Abel Downs *et al.*, defendants in error.

In September, 1854, Austin, on behalf of his firm, left with Downs & Co. an order for fifty sets of skeins and boxes, at a specified price, and to be of a particular size. Downs & Co. had no castings on hand of the size wanted by Davis, Austin & Co., and Austin agreed to wait therefor until patterns could be made. The articles were to be shipped as made. Fifteen sets were forwarded on the 13th of October, 1854, were taken by Davis & Co. to their shop, and were alleged to be defective and returned to the depot, and Downs & Co. notified by mail. The balance of the sets were shipped during the same month, but Davis & Co., without examining to see whether they were also defective, ordered them, together with those previously received, to be returned to Downs & Co. Davis, Austin & Co.'s letter, advising as to the fifteen sets, was sent on the 24th of October. It stated also that the castings were not of suitable size for their use. It did not appear from the case but that they were, in this respect, as ordered by Austin. There was evidence tending to show that the improper size of the castings was the reason why Davis & Co. rejected them. Upon the notice that the castings were defective, Downs & Co. wrote Davis, Austin & Co., offering to make good any defects in the castings, and asking them, on the arrival of the whole, to select out such as were defective and notify them, and they would at once send on those which should be perfect in their place, and gave directions as to the disposal of the others. Davis, Austin & Co. declined this offer. Afterwards Downs & Co. repeated the request, and offered to replace the defective sets at their own cost; to which proposition no answer was returned, but in January following, Davis, Austin & Co. advised Downs & Co. that they had shipped the whole lot back to them. On the trial the Court charged the jury, among other things, that if they should find a part only of the fifty sets were defective, then, inasmuch as there was

no particular time specified for the delivery, it was the duty of the defendants to have notified the plaintiffs of the particular number so defective, to have enabled them to supply others, and fill up the order; and, not having done so, it was competent for the plaintiffs to recover, at the stipulated time, for so many of the articles as they should find were in pursuance of the contract.

In reply to a question of a juror, as follows: "We are, then, to understand that we are charged that the plaintiffs are entitled to recover for all the sets not defective?" the Circuit Judge said, "Yes, that is it."

To all which the defendants excepted, and the jury found a verdict for the plaintiffs of one hundred and eighty-three and seventy-one hundredths dollars, being less than the contract by about the price of *four sets*.

*A. Blair*, for plaintiffs in error.

The charge says that, "inasmuch as there was no *particular time* specified for the delivery, it was the *duty* of the defendants to have notified the plaintiffs of the particular number defective."

But such is not the law. The defendants were not bound to inform the plaintiffs of their own default. But when the article was sent, if, as a whole, it was not in compliance with the contract, they might reject it altogether. The plaintiffs in error refused to accept the skeins and boxes, and sent them back; this they had a right to do. (*Clark* vs. *Moore*, 3 *Mich. R.*, 58; *Bowker* vs. *Hoyt*, 18 *Pick.*, 555.)

This contract was entire, and unless it was entirely fulfilled, the defendants could reject the articles and rescind the contract. This doctrine is fully sustained in the following cases: Clark *vs.* Baker, 5 Metc., 452; 2 Pars. on Cont., 30, 31, 34, 35, and notes; Russell *vs.* Nicoll, 3 Wend., 119; 2 Pars. on Cont., 163, note "I," and 170.

Edward H. Davis *et al.*, plaintiffs in error, *vs.* Abel Downs *et al.*, defendants in error.

The plaintiffs could only excuse themselves from full performance by the default or misconduct of the defendants. (2 *Pars. on Cont.*, 35, *note " d."*)

In this case the default was solely with the plaintiffs. They sent an article which was imperfect, and the defendants sent it back.

The cases in which a plaintiff has been allowed to recover for a part only of the goods agreed to be delivered, all go upon the ground that there has been an acceptance of part. (2 *Pars. on Cont.*, 170, *note* 3.)

The verdict of the jury shows that at least four of the fifteen sets were worthless.

*S. Higby*, for defendants in error.

The castings being made to order, plaintiffs in error could not object to them as inappropriate to the use for which they were intended. (*Pars. on Cont.*, 715; *Chanter* vs. *Hopkins*, 4 *Mees. & Welsb.*, 399.)

The defendants in error acted throughout in good faith ; offered to supply the places of the defective castings, but plaintiffs in error refused to receive them, or to allow the contract to be carried into effect, by receiving fifty good sets. They ought, therefore, to pay for the good sets forwarded them at the time of their refusal ; and this is the effect of the charge of the Judge. (*Story on Cont.*, §§ 850, 851; *Pars. on Cont.*, 139, *and notes.*)

The castings being made to order, and of a different pattern from those manufactured by the defendants in error for their other customers, would be useless in their hands. It is impossible, therefore, that they could be restored to their original condition, and it is unreasonable, in such case, that the plaintiffs in error, for a slight and inadvertant failure by the defendants in error, should be allowed to rescind the whole

contract, whereas, in this case, it is capable of apportionment.
(*Story on Cont.*, 309, *sec.* 977; 2 *Pars. on Cont.*, 35.)

By the Court, WILLSON, J.

The exception to the charge of the Court below, was abandoned on the argument, and it will, therefore, only be necessary for us to review the remaining exception. The defendants in error were bound by the contract, to deliver fifty sets of skeins and boxes as soon as practicable. No time for the delivery was fixed by the contract; they were, therefore, entitled to a reasonable time for its fulfillment on their part. It is insisted on the part of the plaintiffs in error, that the contract was entire, and that, unless it was fulfilled by the vendors, the vendees could reject the article, and rescind the contract. Whether the contract was entire or apportionable, it is not material for us to determine, inasmuch as we are of opinion that the plaintiffs in error undertook to rescind it prematurely. In other words, the plaintiffs undertook to rescind the contract before a reasonable time for the delivery of the articles had elapsed. This will be apparent by a reference to the date of the contract ; the distance between the place of manufacture and delivery ; the unusual size of the skeins and boxes ; and the consequent necessity of making new patterns ; and the time when the articles were delivered. It appears from the evidence, that on the receipt of fifteen sets only, they pass judgment on the whole fifty sets. It was premature in the plaintiffs in error to reject those not yet received for defects in the castings, and there is strong reason to presume that the plaintiffs in error were mainly induced to reject the articles for the reason that they were of an inappropriate size, and not adapted to the use for which they were designed, rather than from any defect in the manufacture. The evidence further shows, that the defendants in

error acted in good faith ; that the defects complained of, if they existed, were not noticed by them before the delivery of the castings, and they immediately offered to supply the place of the defective castings with those of good quality at their own expense, and thus fulfill the contract on their part within a reasonable time from its inception. But the plaintiffs in error, when only fifteen sets had been received by them, twenty-one days after the contract was made, without examining the remaining sets, refuse to receive them, or to allow the contract to be made effectual by receiving fifty good sets. The proposition on the part of the defendants in error to furnish good sets in the place of those which were defective, was both timely and reasonable, and should have been adopted by the plaintiffs in error.

The evidence clearly warranted the charge of the Court, and the verdict of the jury.

The judgment of the Court below must be affirmed, with cost to the defendants in error.

Present, WILLSON, GREEN, BACON, MARTIN, DOUGLASS, J. J.