# CHARLESTON.

EMERSON SHOE CO. v. W. C. NEELY et al., PARTNERS, ETC.

(No. 5310)

Submitted September 15, 1925. Decided September 22, 1925.

SALES—*Tender of Goods to Purchaser Before Contract Time of Delivery, and Refusal on Ground of Premature Delivery, Held Not to Justify Refusal of Goods Tendered at Contract Time.*

A tender of goods to the purchaser, made before the contracted time of delivery, and acceptance refused by him on the sole ground of premature delivery, does not justify refusal of the goods purchased, if they are again tendered at the time the purchaser contracted for delivery; it being shown that the goods tendered comply with the contract of sale and purchase in all other respects.

HATCHER, JUDGE, absent.

(Sales, 35 Cyc. p. 258 [Anno.]).

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Error to Circuit Court, Summers County.

Action by the Emerson Shoe Company against W. C. Neely and another, partners, begun before a justice of the peace. Judgment of nil capiat entered on verdict for defendants on appeal to circuit court, and plaintiff brings error.

*Verdict set aside; judgment reversed.*

A. D. Daly, for plaintiff in error.
James H. Miller, for defendants in error.

LIVELY, PRESIDENT:

This litigation arises from a sale of shoes, specially manufactured by Emerson Shoe Company, a manufacturer of shoes in Rockland, Massachusetts, to and for The Hub Clothing Company, of Hinton, West Virginia, a partnership composed of W. C. Neely and R. C. Neely. Plaintiff sued for the sale price of the shoes before a justice of the peace, and on appeal to the circuit court a jury found for defendants. A motion to set aside the verdict as contrary to the law and evidence was

overruled and judgment nil capiat entered April 22, 1924. This writ followed.

No instructions to the jury were offered or given.

Objection to the reading of the deposition of M. A. Matheson (the salesman who took the order for the shoes from Neely) offered by plaintiff, was overruled. The objection was properly overruled, and no error is based on the court's action in that regard.

There is no controversy that a sale and purchase was made. Matheson, plaintiff's salesman, called on defendant on Oct. 20, 1920, and took an order for the shoes, which were not in stock and were to be manufactured to meet the requirements of the order. The order was not signed by defendant. The sale price was $222. Pursuant to the order received by it on Oct. 25, 1920, the plaintiff began manufacturing the shoes on the next day, and they were shipped by express to defendant on Nov. 23, 1920. On the 27th of that month the express company notified plaintiff that consignee had refused to receive the goods, and asked disposition. Defendant also wrote plaintiff about that time (the letter is not dated) as follows: "Two cases of shoes were delivered to us by the express company today, and we have refused to accept them. We bought these shoes for spring shipment and they were to be sent by freight. We will not accept these shoes at all at this time." The plaintiff answered, stating that the order was for "at once delivery", and in order to hurry forward the shipment, it had used express, although the order directed freight shipment. Plaintiff offered to pay the difference between the cost of freight and express charges. Several letters passed between the parties, in which plaintiff insisted that the order was for "at once shipment", and defendant claimed that the order which was given the salesman was for "spring delivery". This was the only difference between the parties as to the contract. No point was raised as to the goods, their quality, or conformation with the order. Defendant refused to receive the goods, on the sole ground that they were ordered for "spring delivery," and that they had been shipped by express instead of by freight; and that it had no room to store the goods until spring, and would not need them until that time. Plaintiff had the shoes returned to them to

save sale for express, some time in the latter part of December. On January 15, 1921, plaintiff again wrote defendant that it had caused the shoes to be returned to it (plaintiff) and would make the spring delivery as defendant contended it should be made, and asked on what date it should send the shoes. ˙Defendants answered by notation on ˙that letter: ''Gents, Please cancel my order we dont want to deal with a firm like this.'' (Signed) ''the Hub Clo. Co''. Plaintiff refused to cancel the order, stating that it had been at expense in manufacturing. these special shoes, and insisted on defendant taking the shoes˙and paying the sale price.˙ March 19, 1921, defendant wrote it did not need the shoes, business was not then good, and it ''would rather cancel same if possible'', and indicated it would purchase shoes from plaintiff later on when business conditions changed. Plaintiff again refused to cancel the order, asked what disposition it should make of the shoes, and requested payment of the sale price. Defendant again refused ·to take the goods or pay the sale price, and asked that the correspondence cease. The market price of shoes had sharply declined from the time of contract and the following spring. It is obvious that the sole controversy is over the time of delivery.

Plaintiff attempted ·to deliver the goods in November, basing the attempt upon the written order; and again proffered the goods in the spring for spring delivery upon the claim of defendant that it had ordered for spring delivery. Defendant's sole claim is that it purchased for spring delivery. The controlling legal question of law is, whether the attempted fall delivery was such a breach of the contract on the part of plaintiff as will avoid the contract.

If a buyer of goods without lawful excuse refuses. to. accept the goods when proffered according to the terms of the contract he is liable on the ordinary principles of contracts for breach of obligation. This is peculiarly so in sales of goods manufactured especially for the needs of the buyer. The seller has partly performed the contract, has expended money in pursuance thereof, and though the goods have not been delivered, the purchaser must have a lawful. excuse to refuse to receive them when proffered ·at the time agreed upon for delivery.

In some jurisdictions a seller cannot maintain an action for the price of the goods unless the property has passed, and such is the general rule in England. But many of the States repudiate this rule. They hold that if the reason why the property in the goods has not passed is because the buyer wrongfully refused to take title when they are offered to him, the seller may recover the full purchase price; and Williston on Sales, in Sec. 152, says that perhaps the weight of authority in this country approves this rule. This suit began before a justice of the peace where the pleadings are informal. The summons is not in the record. The transcript simply says "Plaintiff sues to recover of the Deft. $255.32".

Do the goods have to be transported and brought to the door of the buyer in order to proffer a delivery? Reason does not make this an absolute rule in all cases. Where the buyer repudiates the contract and says he will not accept the goods proffered to be shipped to him, it is not the duty of the seller to go to the futile expense of shipping. It is the duty of the seller to minimize the damages, and if he should incur the expense of shipment, knowing it to be a vain and useless expenditure, he would be precluded under the law of damages from recovering therefor. Damages needlessly incurred are universally disallowed. Williston on Sales, Sec. 589. "If the purchaser repudiates the contract, or notifies the seller that he will not accept the goods, a formal tender is not necessary." 35 Cyc. 584. Where the buyer refuses to accept the goods when offered to him according to the contract, the seller may elect to rescind the contract and dispose of the goods for his own use and hold the buyer liable for the price and damages arising from the breach. He may sue for the price when due and payable, or he may sell the goods, apply the net proceeds to the sale price, and sue the buyer for the balance. *Rosenbaums* v. *Weeden,* 18 Grat. 785. If the contract be executory and the title and possession remain in the seller, the measure of his damages for refusal of the buyer to accept the goods, without lawful excuse, is generally the difference between the contract price and the market value at the time and place of delivery. 12 Ency. Digest Va. & W. Va. Repts. page 43. These well established principles of the law

of sales are referred to here inasmuch as the jury may have concluded (not being instructed on the law) that plaintiff was not entitled to recover because the shoes were not again shipped in the spring and manual delivery tendered.; and that plaintiff could not retain possession of the goods and at the same time recover for the purchase price, or damages for the breach.

We revert to the controlling question as to whether the shipment and tender of the goods in November, breached the contract and excused defendant from taking the goods when they were offered for delivery in the following spring. A breach to be availing as an excuse for repudiation must be a material breach. Some right under the contract must be affected to the injury of the party to whom that right belongs. ''The general rule of contracts is that a party is not excused by the other party's breach of contract unless the breach is material or essential.'' Williston on Sales, Sec. 453; *Ellison Shoe Co. v. Flat Top Grocery Co.*, 69 W. Va. 380.

In *Borrowman* v. *Free*, 4 Q. B. Div. page 500, a cargo of maize was sold to be shipped between the 15th of May and 30th of June. A cargo was offered which defendant refused to accept because it did not comply with the contract. By arbitration of that contention, the arbitrator found in favor of the buyer. The plaintiff, however, subsequently, but still within the time of delivery fixed by the contract, offered defendant another cargo in conformity with the contract. Defendant refused to take it, and was held liable for refusing it.

In *Tetley* v. *Shand*, 25 L. T. 658, 20 W. R. 206, cotton was purchased, and before the expiration of time for delivery cotton was tendered which was rejected by the purchaser as not being within the terms of the contract. But before the expiration of time for delivery plaintiff again tendered cotton that was in accordance with the contract. It was held that the abortive tender did not justify refusal of the cotton subsequently tendered. See also Williston on Contracts, Vol. 3, Sec. 1295; Benjamin on Sales (7th American Ed.) Sec. 697.

A delivery of goods before the time agreed upon does not pass title to the purchaser and render him liable for the purchase price, unless he accepts the property or otherwise waives

his objection to the premature delivery; and a suit by the seller based on a premature delivery or. attempted delivery not waived by the buyer, would be unavailing. He has breached his contract, and the purchaser is justified in refusing the goods at that time. *Arons* v. *Cummings* (Me.) 31 L. R. A. (N. S.) .942 and monographic note; *Tascott* v. *Rosenthal,* 10 Ill. App. 639. In these two cases last .cited, goods had been prematurely shipped and were lost. The seller sued for the purchase price and recovery was denied. The seller in each case relied upon the premature delivery as a performance of the contract. In the case under consideration plaintiff is not relying altogether on the November shipment and tender. It ordered the goods back when they were refused, held them for the purchaser and tendered them to it in the spring in accordance with the contract as defendant claimed it to be. Plaintiff does not rely on the first tender and shipment, but puts in evidence the tender for spring delivery, and relies upon its attempt to perform in accordance with defendant's version of the contract. It is difficult to see wherein defendant was injured or prejudiced by the first offer and tender of delivery. The goods were manufactured and offered for delivery at the time he claimed they should have been delivered. The abortive attempt of premature delivery (made no doubt in good faith by plaintiff under the written order) did not release defendant from its contract; nor would it, on the other hand, excuse plaintiff from delivering the goods in the spring had the market prices on shoes advanced to such an extent as to render its contract a burdensome and unfruitful one.

The verdict is contrary to the law and evidence and will be set aside, the judgment reversed and the case remanded for a new trial.

*Verdict set aside; judgment reversed; new trial.*